952 A.2d 493 (2008)
401 N.J. Super. 596
Roy M. VICTOR, Plaintiff-Respondent/Cross-Appellant,
v.
STATE of New Jersey, New Jersey State Police, Sgt. Eric Estok, Dr. Donald Izzi, Capt. Salvatore Maggio, and Lt. Paul Wagner, Defendants-Appellants/Cross-Respondents.
No. A-6001-05T1
Superior Court of New Jersey, Appellate Division.
Submitted April 23, 2008.
Decided July 24, 2008.
*496 Anne Milgram, Attorney General, for appellants/cross-respondents (Patrick DeAlmeida, Assistant Attorney General, of counsel; Randall B. Weaver and Vincent J. Rizzo, Jr., Deputy Attorneys General, on the brief).
Eldridge Hawkins, L.L.C., East Orange, for respondent/cross-appellant (Mr. Hawkins, on the brief).
Before Judges CUFF, LIHOTZ and SIMONELLI.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
In this employment discrimination matter, defendants, the State of New Jersey (State), the New Jersey State Police (NJSP), Lieutenant Paul Wagner, Sergeant Eric Estok, and Donald Izzi, M.D., appeal from the denial of their motions for a judgment notwithstanding the verdict and/or new trial.[1] Plaintiff cross-appealed, arguing the trial court improperly limited his claim for damages.
Plaintiff alleged discriminatory treatment based upon race and medical disability in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Plaintiff's complaint included an allegation that the NJSP failed to accommodate plaintiff's physical disability. As to that claim, we address whether plaintiff has an affirmative obligation to prove he suffered an adverse employment action as a result of his employer's failure to accommodate his disability. Following our review of the law, we answer this question affirmatively, and because the jury was not requested to separate the damages resulting from this claim, we are constrained to reverse and remand for a new trial.

I
Plaintiff Roy Victor began his career as a New Jersey state trooper on April 10, 1986. Generally, troopers are promoted to "Trooper II" after seven years service in the NJSP system and to "Trooper I" after nine and one-half years of service. Plaintiff received each of these promotions. He was assigned to the Totowa NJSP Substation as a Trooper I. When plaintiff's causes of action accrued, Wagner was the Totowa Station Commander, Estok was the Totowa Squad Sergeant, and Dr. Izzi was NJSP's director of medical services to whom each troop division doctor reported. Seniority among troopers is determined by the trooper's badge number: lower badge numbers signify greater seniority. In his squad, plaintiff was the most senior trooper and served as the assistant squad supervisor.
While on duty in 1995, plaintiff injured his back in a car accident. Under the stated policy guidelines, after three days on sick leave, a trooper must be examined by a division doctor and produce medical documentation supporting the claimed injury or illness. Only a division doctor could change a trooper's duty status. A trooper on off-duty status must see the same division doctor until his or her injury or illness is resolved. Complying with these procedures, plaintiff returned to full-duty status after a six-week absence. In 1996, while on duty, plaintiff suffered another accident that injured his back. He returned to full duty in April 1998.
On April 11, 1998, plaintiff was transferred to the Somerville NJSP Station located in Bridgewater, which was approximately thirty-five miles from his residence. He filed an Equal Employment Opportunity *497 (EEO) complaint objecting to this transfer. The record does not disclose the disposition of this complaint. In Somerville, plaintiff served as the acting squad sergeant during periods of the sergeant's absence.
After one month, plaintiff requested sick-leave due to stress. According to plaintiff, he experienced psychological problems, including stress and depression, related to family issues, his EEO complaint, and the transfer to Somerville. Plaintiff was placed on temporary off-duty status, the equivalent of sick leave. As plaintiff obtained treatment, his status fluctuated between limited duty and off duty, until the fall of 1999, when plaintiff returned to full-duty status as a Trooper I. After a few days, plaintiff experienced recurring back problems. Over the next two years, plaintiff was on extended leave, due to his back problems and stress. In August 2001, plaintiff reported to the Totowa Substation for full duty.
Initially at Totowa, plaintiff was ranked as the third man in his squad. However, due to a change in squad structure, a road sergeant was added as the third man above the most senior Trooper I. Plaintiff was moved to the fourth position and a trooper with a higher badge number was transferred to the squad as the acting road sergeant. Plaintiff questioned Wagner about his placement as the fourth man. Wagner explained plaintiff missed necessary trainings regarding compliance with new mandatory procedures while he was on medical leave. Plaintiff was told he needed to receive the training and demonstrate his competence working with the new procedures.
Squad openings developed two months later. Plaintiff had completed the required training. Nevertheless, Estok, presumably with Wagner's assent, advanced white troopers, junior in seniority to plaintiff, who was African American, to fill these positions. Specifically, on two occasions, a more junior white trooper was transferred to fill an opening for the third man spot on plaintiff's squad and on another squad in the barracks, while plaintiff remained the fourth man on his squad. Both of these white troopers, as well as the white trooper who first replaced plaintiff as senior man, ultimately became sergeants.
Around this time, plaintiff alleged Estok, as squad sergeant, demonstrated a condescending attitude toward him and made embarrassing remarks in the squad room regarding his abilities. For example, Estok asked plaintiff if "he could handle" his assignment by himself and plaintiff was told by another trooper that Estok said plaintiff would never be placed in a supervisory position in his squad.
In January 2002, plaintiff suffered from stress and was placed on off duty status. The following month, plaintiff filed a second EEO complaint, alleging a hostile work environment. The complaint was dismissed as unsubstantiated.
In April 2003, plaintiff returned to work as a Trooper I, assigned to the Bloomfield Station. As a result of his back problems, he was assigned limited duty work. On December 8, 2003, plaintiff was cleared for full-duty status and expected to perform all physical tasks required of a trooper. He was to report to work on December 11, 2003. When plaintiff reported for duty, he explained he had hurt his back between December 8 and 10, while preparing for the physical fitness test. He also stated wearing a protective vest while on road patrol exacerbated his back injury. Plaintiff sought permission from the assistant station commander, Sergeant O'Rourke, to perform administrative tasks in the station. O'Rourke consented.
*498 The station commander determined plaintiff had been cleared for full duty and produced no medical documentation regarding the recent back injury. Thus, notwithstanding O'Rourke's consent to allow plaintiff to perform administrative tasks, he ordered plaintiff to return to patrol duty. Plaintiff complied, but after four hours returned to the station and sought sick time for the remaining hours of his shift. He then requested sick leave for December 12, 15 and 16.
On December 17, plaintiff filed his third EEO complaint regarding this incident. The complaint was found to be unsubstantiated.
Also, on December 17, 2003, plaintiff was examined by a division physician regarding his back and stress complaints. The doctor placed plaintiff on off-duty status. That decision was rescinded by Dr. Izzi because plaintiff did not return to the division physician who last treated his condition, and he did not produce medical documentation substantiating his injury.
On December 19, plaintiff received a letter from Lieutenant Colonel Lori Hennon-Bell, on behalf of Colonel Fuentes, the NJSP superintendent. The letter informed plaintiff he had been placed on leave-without-pay status until he presented "adequate medical information regarding the medical condition that you claim prevents you from returning to duty." That status would continue until the documentation was provided and an updated duty status determination was reviewed by Dr. Izzi. Dr. Izzi was not involved in making this decision.
On December 23, 2003, plaintiff submitted a letter from his psychologist, Dr. Brinkelhof, stating he suffered from an adjustment disorder, a chronic depressed mood, and stress. As a result, Dr. Izzi scheduled plaintiff for an independent psychological evaluation. The psychologist's report concluded plaintiff could not return to full-duty status. Dr. Izzi placed plaintiff on off-duty status in January 2004, and plaintiff received his back pay. Plaintiff remained on off-duty status until July 2004, when he returned to the Totowa Substation where he continues to work.
In March 2005, plaintiff filed an amended four-count complaint, which included allegations that he was treated in a disparate manner from his white counterparts and was subject to a hostile work environment in violation of the LAD. Plaintiff relied on a series of events that he claimed, viewed separately or cumulatively, supported his assertions of disparate treatment, retaliation, failure to accommodate, and other torts.
Certain claims were dismissed prior to trial. The claims presented at trial included: Wagner and Estok acted maliciously by promoting white troopers junior in rank ahead of plaintiff and created a hostile work environment; the NJSP generally, and Dr. Izzi in particular, retaliated against plaintiff for filing EEO complaints regarding various incidents; the defendants failed to accommodate plaintiff's disability on December 11, 2003; and defendant's actions intentionally inflicted emotional distress. At the close of evidence, the court dismissed the tort claim against all defendants except Dr. Izzi and limited the hostile work environment claim to defendants Wagner, Dr. Izzi, and the NJSP.
The jury found Dr. Izzi, Wagner and Estok not liable. The State and the NJSP were found liable for disparate treatment in the terms and conditions of plaintiff's employment, failure to accommodate, and retaliation. The jury awarded plaintiff $65,000 in compensatory damages and no lost wages. The court denied defendants' motion to dismiss plaintiff's punitive damage *499 claim, and after a brief trial, the jury awarded plaintiff $250,000 in punitive damages.
Defendants filed a motion for judgment notwithstanding the verdict or a new trial, which the court denied. Thereafter, judgment was entered in favor of plaintiff and against the State and the NJSP in the amount of $65,000 in compensatory damages, $250,000 in punitive damages, $8,885 in prejudgment interest, and $46,105 in counsel fees, for a total of $278,390.
Because this appeal arises in the context of the trial court's denial of defendants' motion for judgment notwithstanding the verdict and for a new trial, we accept as true all the evidence supporting plaintiff's claim and accord him all legitimate inferences, Zive v. Stanley Roberts, Inc., 182 N.J. 436, 441, 867 A.2d 1133 (2005), bearing in mind that "the trial court's `action[s] should not be disturbed unless it clearly and unequivocally appears there was a manifest denial of justice under the law.'" Dolson v. Anastasia, 55 N.J. 2, 8, 258 A.2d 706 (1969) (quoting Hartpence v. Grouleff, 15 N.J. 545, 549, 105 A.2d 514 (1954)). However, "a trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference," but are subject to de novo review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Defendants' challenge cites error in the proofs necessary for plaintiff to prevail on his claim, arguing that the jury charge omitted plaintiff's obligation to prove he suffered an adverse employment action as a result of the employer's alleged failure to accommodate. This LAD violation centers on the supervisor's refusal to allow plaintiff to work inside on December 11, 2003, when he complained of a back injury and explained the body armor, required to be worn for patrol duty, exacerbated his back condition. Plaintiff maintained defendants, in this instance, failed to provide a reasonable accommodation for his physical disability.
During the charge conference, defendants requested a jury charge stating that in order for plaintiff to succeed on his failure-to-accommodate claim, he had to prove he suffered an "adverse employment action." The trial court rejected this request, noting plaintiff
says he sustained psychological injury as a result of the treatment of him when he came back on December 11th and they refused to accommodate his handicap by allowing him to stay in the station.
So he's claiming that he was injured as a result of the . . . failure to accommodate his handicap. So that, to me, I mean, I don't need to get into an adverse employment action. He has to prove his damages.
Following summations, the trial judge again reviewed the issue and concluded the law did not require plaintiff to demonstrate defendants took adverse employment action against him in order to succeed on his claim. The court noted,
usually the failure to accommodate comes up in the context of terminations or transfers, demotions and that sort of thing. But as I explained on the record yesterday, the claim here is that he suffered psychological injury by the failure to accommodate him and the stress that was attendant with that day on December [11] and to me that was sufficient under the circumstances.
In the jury instruction, the trial judge discussed plaintiff's failure-to-accommodate claim, explained the events pertaining to the claim and defined a qualifying physical disability under the statute. The jury was also told that

*500 when an employee seeks an accommodation for a disability, the employer is required to engage in an interactive process as part of a good faith effort to identify the precise limitations resulting from a disability and potential reasonable accommodations that could overcome those limitations. A failure-to-accommodate is demonstrated when the employer fails to engage in this interactive process in good faith.
[W]hen a disabled employee requests an accommodation and the employer contends that the accommodation would impose an undue hardship on the employer's business, the employer has the burden of proving that the requested accommodation would constitute an undue burden on the employer's business.
The judge concluded stating plaintiff must prove
he had a physical disability on December [11], 2003 when he alleges that the failure to accommodate his disability occurred. To answer this question you'll have to examine the proofs in the case in light of the definition of disability that I just gave you.
If plaintiff fails to prove by a preponderance of the credible evidence that he had a physical disability within the meaning of the [LAD] on December [11], 2003 when he alleges that the failure to accommodate his disability occurred, you must find for defendants on plaintiff's failure-to-accommodate claim. If, however, plaintiff is able to prove that he was disabled on December [11], 2003, he still must prove by a preponderance of the believable evidence that the [NJSP] knew about plaintiff's alleged disability, that plaintiff requested an accommodation for his alleged disability, that the [NJSP] did not make a good faith effort to assist plaintiff regarding accommodations for his disability and that plaintiff could have been reasonably accommodated but for the lack of good faith on the part of the [NJSP].
If you find that plaintiff has proven the facts required for his failure-to-accommodate claim by a preponderance of the believable evidence, then you must return a verdict for plaintiff on that claim. If, however, you find that plaintiff has failed to prove any of the facts required for his accommodation claim by a preponderance of the believable evidence, then you must return a verdict for the defendants on this claim.
The instruction did not include the necessity of a finding that plaintiff suffered an adverse employment action.
After verdict, defendants moved for a new trial or judgment notwithstanding the verdict, again raising the same argument. The trial judge concluded:
I believe that the jury charge was correct and it's consistent with New Jersey law. In my view . . . if you prove failure to accommodate, that failure is in and of itself an adverse employment action. I mean the case law doesn't say that specifically but to me that's implicit in the failure-to-accommodate charge.
If you don't accommodate someone, that is an adverse action to them if they can prove all the elements of failure to accommodate. And here, although the State argues today and they argued to this jury that there was no effect on Trooper Victor . . . when he was told to go out on duty when he had requested to stay inside because of the back spasms he was experiencing, a jury could find that the decision of the employer not to allow him to stay in was a failure to accommodate and that failure to accommodate resulted in Trooper Victor's going on the road and in his words . . . experiencing excruciating pain because *501 he had to put on the vest with the tight winter blouse. . . .
On appeal, defendants argue the court erred in this determination. Defendants also assert the trial judge erred in denying their request for a directed verdict on the failure-to-accommodate claim and in allowing an award of punitive damages. Defendants seek a new trial on all of plaintiff's claims.
In his cross-appeal, plaintiff contends the court's jury instruction wrongfully limited his claim for psychological damages by requiring plaintiff to prove "defendants' wrongful conduct was a proximate cause of plaintiff's psychological injury." He too, seeks a new trial.

II
The LAD prohibits employment discrimination on the basis of a disability. N.J.S.A. 10:5-4.1 to -29.1; Potente v. County of Hudson, 187 N.J. 103, 110, 900 A.2d 787 (2006). New Jersey courts have articulated the elements of a prima facie case of discrimination, identifying the following common factors: (1) plaintiff was handicapped or disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) plaintiff suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position. Leshner v. McCollister's Transp. Sys., 113 F.Supp.2d 689, 692 (D.N.J.2000) (citing Maher v. N.J. Transit Rail Operations, 125 N.J. 455, 480-81, 593 A.2d 750 (1991)); Murphy v. Hous. Auth. & Urban Redev. Agency of Atl. City, 32 F.Supp.2d 753, 763 (D.N.J. 1999), aff'd, 208 F.3d 206 (3d Cir.2000); Gerety v. Atl. City Hilton Casino Resort, 184 N.J. 391, 399, 877 A.2d 1233 (2005); Zive, supra, 182 N.J. at 447, 867 A.2d 1133; Mandel v. UBS/PaineWebber, Inc., 373 N.J.Super. 55, 70, 860 A.2d 945 (App. Div.2004); Andersen v. Exxon Co., 89 N.J. 483, 492, 446 A.2d 486 (1982) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L. Ed.2d 668, 677 (1973)); Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 593, 538 A.2d 794 (1988); Harris v. Middlesex County Coll., 353 N.J.Super. 31, 42, 801 A.2d 397 (App.Div.2002); Muller v. Exxon Research and Eng'g Co., 345 N.J.Super. 595, 602, 786 A.2d 143 (App.Div.2001), certif. denied, 172 N.J. 355, 798 A.2d 1269 (2002); Svarnas v. AT & T Commc'ns, 326 N.J.Super. 59, 73, 740 A.2d 662 (App.Div.1999); Greenberg v. Camden County Voc. & Tech. Sch., 310 N.J.Super. 189, 198, 708 A.2d 460 (App.Div.1998).
"The failure to accommodate is one of two distinct categories of disability discrimination claims . . . the other being disparate treatment discrimination . . ." Tynan v. Vicinage 13 of Superior Court, 351 N.J.Super. 385, 397, 798 A.2d 648 (App.Div.2002). Although, the statute does not specifically address reasonable accommodation, "`our courts have uniformly held that the [LAD] nevertheless requires an employer to reasonably accommodate an employee's handicap.'" Potente, supra, 187 N.J. at 110, 900 A.2d 787 (citing Tynan, supra, 351 N.J.Super. at 396, 798 A.2d 648); Viscik v. Fowler Equip. Co., 173 N.J. 1, 11, 800 A.2d 826 (2002); Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J.Super. 78, 91, 783 A.2d 731 (App.Div.2001); Muller, supra, 345 N.J.Super. at 604, 786 A.2d 143.
Consistent with this interpretation, the regulations promulgated under the statute provide an employer must make a reasonable accommodation to the limitations of a handicapped employee, unless the employer can demonstrate that the accommodation *502 would impose an undue hardship on the operation of its business. N.J.A.C. 13:13-2.5(b); Soules v. Mount Holiness Mem'l Park, 354 N.J.Super. 569, 576-77, 808 A.2d 863 (App.Div.2002).
When examining a failure to accommodate claim, courts have limited the proofs to the first three elements of a prima facie discrimination claim "[b]ecause the fourth element's function is to allow an inference to be drawn of disparate treatment, the plaintiff need only establish it as to the discrimination claim, and not as to the reasonable accommodation claim." Leshner, supra, 113 F.Supp.2d at 692; see also LaResca v. AT & T, 161 F.Supp.2d 323, 329 (D.N.J.2001); Van de Pol v. Caesars Hotel Casino, 979 F.Supp. 308, 312 (D.N.J.1997); Bosshard, supra, 345 N.J.Super. at 91, 783 A.2d 731; Seiden v. Marina Assocs., 315 N.J.Super. 451, 465-66, 718 A.2d 1230 (Law Div.1998).
In discussing whether a plaintiff has satisfactorily presented proofs to succeed on a failure-to-accommodate claim, many cases discuss whether a plaintiff has satisfactorily proven a qualifying disability under the LAD. See Clowes, supra, 109 N.J. at 593-94, 538 A.2d 794 (alcoholism qualifies as handicap); Harris, supra, 353 N.J.Super. at 44, 801 A.2d 397 (reversed summary judgment finding that plaintiff who had been treated for breast cancer was not "handicapped" under the LAD); Tynan, supra, 351 N.J.Super. at 398-99, 798 A.2d 648 (post-traumatic stress disorder created an accommodatable handicap); Bosshard, supra, 345 N.J.Super. at 85, 783 A.2d 731 (when heroin addiction may be a handicap); A.B.C. v. XYZ Corp., 282 N.J.Super. 494, 508, 660 A.2d 1199 (App.Div.1995) (conduct of a criminal nature is not a handicap under the LAD). Or cases discuss whether a plaintiff was able to perform the essential functions of his or her position. Raspa v. Office of Sheriff of County of Gloucester, 191 N.J. 323, 338-39, 924 A.2d 435 (2007) (disability of county corrections officer permanently rendered him unable to have contact with inmates, thus he was unqualified for his job); Muller, supra, 345 N.J.Super. at 605, 786 A.2d 143 (affirmed trial court's finding employee's elbow injury made him unable to perform the essential functions of his job as a senior construction mechanic); Svarnas, supra, 326 N.J.Super. at 77, 740 A.2d 662 (plaintiff not qualified to do her work due to sporadic, unpredictable, chronic, and excessive absenteeism); Malone v. Aramark Servs., Inc., 334 N.J.Super. 669, 675, 760 A.2d 833 (Law Div.2000) (same).
We are at a loss to locate a state court decision addressing whether plaintiff must prove an adverse employment action occurred as a result of a failure to accommodate a claimed disability. Likely, because an adverse employment action was self-evident in that the plaintiff had experienced an alteration of the conditions of employment prior to suit. Here, plaintiff was not passed over for promotion, fired, transferred, reassigned, demoted or even docked wages when he was told to resume patrol duty despite his back discomfort.
Defendants argue the absence of an adverse employment action entitles them to judgment as a matter of law. Plaintiff counters asserting the trial judge's jury instructions were correct presumably, relying on the court's conclusion that a failure to accommodate itself is an adverse employment action. Plaintiff, alternatively suggests that any error in the jury instructions on this issue was "not fatal" because "the jury was instructed on `adverse employment action' in [plaintiff's] other causes of action."
We underscore that the LAD "is remedial social legislation, . . . deserving of a liberal construction." Clowes, supra, 109 N.J. at 590, 538 A.2d 794. "Underlying *503 the LAD's expansive language advocating the elimination of discrimination is also the directive that we compensate victims for economic and noneconomic injuries attributable to an employer's discriminatory conduct." Tarr v. Ciasulli, 181 N.J. 70, 80, 853 A.2d 921 (2004) (citing N.J.S.A. 10:5-3). "The efficient prosecution of claims is essential to the elimination of discrimination from the workplace." Montells v. Haynes, 133 N.J. 282, 290, 627 A.2d 654 (1993).
Finding no New Jersey authority squarely addressing the issue presented, we look to the substantive standards established under federal law for guidance, particularly the Americans with Disabilities Act (ADA), 42 U.S.C.A. § 12101 to § 12213. See Bergen Commer. Bank v. Sisler, 157 N.J. 188, 200, 723 A.2d 944 (1999) ("To the extent the federal standards are `useful and fair,' they will be applied in the interest of achieving a degree of uniformity in the discrimination laws."); Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97, 570 A.2d 903 (1990) (in interpreting LAD, look to federal anti-discrimination cases as key source of interpretive authority); Jones v. Aluminum Shapes, 339 N.J.Super. 412, 421-22, 772 A.2d 34 (App.Div.2001) (same); Ensslin v. Twp. of N. Bergen, 275 N.J.Super. 352, 364, 646 A.2d 452 (App.Div.1994) (reference made to analogous provisions of the Rehabilitation Act, 29 U.S.C.A. § 794, when interpreting LAD); Seiden, supra, 315 N.J.Super. at 461, 718 A.2d 1230 (reference to federal precedent addressing handicap discrimination).
The ADA defines "reasonable accommodation." 42 U.S.C.A. § 12111(9). Further, the statute identifies acceptable employer actions that reasonably assist disabled employees, 42 U.S.C.A. § 12111(9)(b), and specifies that an employer discriminates against an individual with a disability when the employer does not make reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer. 42 U.S.C.A. § 12112(b)(5)(A).
Additionally, the ADA's regulations state: "To determine the appropriate reasonable accommodation it may be necessary for the [employer] with a disability to initiate an informal, interactive process with the [employee] in need of accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).
This court has adopted this interactive process when analyzing "what appropriate accommodation is necessary" in a specific circumstance. Tynan, supra, 351 N.J.Super. at 400, 798 A.2d 648; Jones, supra, 339 N.J.Super. at 421, 772 A.2d 34. We have stated:
This process must identify the potential reasonable accommodations that could be adopted to overcome the employee's precise limitations resulting from the disability. Once a handicapped employee has requested assistance, it is the employer who must make the reasonable effort to determine the appropriate accommodation.
To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been *504 reasonably accommodated but for the employer's lack of good faith.
[Tynan, supra, 351 N.J.Super. at 400-01, 798 A.2d 648 (citations omitted).]
In its jury instruction, the court limited the plaintiff's necessary proofs to these factors. No reference was made to the prima facie proofs needed to succeed on a discrimination claim. Therefore, by concentrating on the proofs evidencing a failure to participate in the interactive process, the trial judge suggested to the jury that plaintiff need only show the NJSP failed to engage in the process to succeed on his failure-to-accommodate claim. Perhaps this prompted the judge's post-trial motion comment: "In my view . . . if you prove failure to accommodate, that failure is in and of itself an adverse employment action."
We do not agree with this conclusion. Under the LAD, proof of discrimination "remains with the employee at all times." Zive, supra, 182 N.J. at 450, 867 A.2d 1133. A plaintiff first must show the "rather modest" three elements of a prima facie discrimination case. Marzano v. Computer Sci. Corp., 91 F.3d 497, 507 (3d Cir.1996); Leshner, supra, 113 F.Supp.2d at 692. Failure to accommodate is not discrete from discrimination, but an act that may prove discrimination. In other words, a plaintiff's proof of the lack of the employer's engagement in an interactive process to determine the need and availability of a reasonable accommodation, supplements the requisite presentation of a prima facie case of discrimination.
In a failure to accommodate case of disability discrimination, a plaintiff must first present the prima facie elements required in any LAD disability discrimination claim, that is: (1) plaintiff was disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment; and (3) plaintiff suffered an adverse employment action because of the disability. Each of these elements must be shown, including proof of some material adverse change in the terms and conditions of employment. Jones v. Sch. Dist., 198 F.3d 403, 411 (3d Cir.1999).
The additional factors identified in Tynan, supra, 351 N.J.Super. at 401-02, 798 A.2d 648, support the second element that the employee could perform the essential functions of employment with reasonable accommodation. In that regard, the employee must show the employer was informed of the disability, the employee requested accommodation, the employer made no good faith effort to assist, and the accommodation could have been reasonably achieved. Id. at 404, 798 A.2d 648.
The proofs necessary to demonstrate an "adverse employment action" must be examined on a case-by-case basis. An adverse employment action is easily satisfied by evidence of a failure to hire or by a firing. At the other end of the spectrum, we have held that "unfavorable evaluations, unaccompanied by a demotion or similar action or a job reassignment with no corresponding reduction in wages or status is insufficient." El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J.Super. 145, 170, 887 A.2d 1170 (App.Div.2005).
We also look for guidance on this issue in determinations pursuant to the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8, which contains the phrase "adverse employment action" in its definition of "retaliatory action." A "retaliatory action" against an employee for protected conduct under CEPA means "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). CEPA, like the LAD, *505 is "remedial" legislation, and "we discern no ground on which to conclude that the meaning of the prohibited adverse employment actions" between the statutes "is significantly different." El-Sioufi, supra, 382 N.J.Super. at 170 n. 8, 887 A.2d 1170.
"In the CEPA context, . . . we have held that, in order to be actionable, an allegedly retaliatory act must be `sufficiently severe or pervasive to have altered plaintiff's conditions of employment in an important and material manner.'" El-Sioufi, supra, 382 N.J.Super. at 176, 887 A.2d 1170 (citing Cokus v. Bristol-Myers Squibb Co., 362 N.J.Super. 245, 246, 827 A.2d 1098 (App. Div.), certif. denied, 178 N.J. 32, 834 A.2d 405 (2003)). This could include "a withdrawal of benefits formerly provided to an employee," Maimone v. City of Atl. City, 188 N.J. 221, 235-36, 903 A.2d 1055 (2006), but does not include actions, which "result in a bruised ego or injured pride on the part of the employee," Beasley v. Passaic County, 377 N.J.Super. 585, 607, 873 A.2d 673 (App.Div.2005); temporary reassignment, Klein v. Univ. of Med. and Dentistry of N.J., 377 N.J.Super. 28, 47, 871 A.2d 681 (App.Div.), certif. denied, 185 N.J. 39, 878 A.2d 856 (2005); or a supervisor's decision to no longer socialize with an employee. Cokus, supra, 362 N.J.Super. at 382-83, 827 A.2d 1173. "The case law also strongly suggests that plaintiffs' emotional distress alone is not a cognizable injury within the CEPA context." Hancock v. Borough of Oaklyn, 347 N.J.Super. 350, 361, 790 A.2d 186 (App.Div.2002); see Kadetsky v. Egg Harbor Twp. Bd. of Educ., 82 F.Supp.2d 327, 340 (D.N.J.2000).
From this analysis, we do not suggest the adverse employment action under the LAD is the same as a retaliatory action under CEPA. We can conclude that an employer's adverse employment action must rise above something that makes an employee unhappy, resentful or otherwise cause an incidental workplace dissatisfaction. Clearly, actions that affect wages, benefits, or result in direct economic harm qualify. So too, noneconomic actions that cause a significant, non-temporary adverse change in employment status or the terms and conditions of employment would suffice. We recognize an exhaustive list of qualifying events cannot be compiled and these determinations must turn on the facts and circumstances presented.

III
We now focus on defendants' challenge to the jury charge in this case. A jury charge in a LAD matter requires the jury be given "an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case." Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 374, 915 A.2d 518 (2007) (quoting Rendine v. Pantzer, 276 N.J.Super. 398, 431, 648 A.2d 223 (App. Div.1994) aff'd, 141 N.J. 292, 661 A.2d 1202 (1995)). When examining claimed error with respect to a jury charge, we view the charge as a whole to determine whether it was defective. Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 137 (3d Cir.1997), cert. denied, 522 U.S. 1116, 118 S.Ct. 1052, 140 L. Ed.2d 115; Vallejo by Morales v. Rahway Police Dep't, 292 N.J.Super. 333, 342, 678 A.2d 1135 (App.Div.), certif. denied, 147 N.J. 262, 686 A.2d 763 (1996). We do not focus on individual errors in isolation. Ryder, supra, 128 F.3d at 137. If the jury charge is incorrect, it "constitutes reversible error only if the jury could have come to a different result had it been correctly instructed." Viscik, supra, 173 N.J. at 18, 800 A.2d 826.
Here, we reverse because the charge was legally insufficient as it incorrectly stated the applicable law by failing to require a finding that plaintiff suffered *506 an adverse employment action. See Velazquez ex rel. Velazquez v. Portadin, 163 N.J. 677, 688, 751 A.2d 102 (2000); See also Vallejo by Morales, supra, 292 N.J.Super. at 342, 678 A.2d 1135. Our decision requires that the jury must determine whether plaintiff suffered an adverse employment action. We disagree with the trial judge that such an action is presumed by the failure to accommodate or that plaintiff's claimed psychological suffering unequivocally qualifies.
Additionally, we must order a new trial because of the inability to separate from the total jury award, the damages attributable to the failure to accommodate claim. Although plaintiff's claims were individually set forth, the damage award was not segregated; the verdict awarded one sum for all discriminatory actions attributed to the State and the NJSP.
We conclude by repeating the trial judge's comment that the model charges are inadequate to address failure to accommodate claims and the matter should be "referred to the committee on civil jury charges to develop a failure to accommodate charge" for use by trial judges. We agree that such an aid would assist the trial bench when addressing these matters.

IV
As to the remaining issues raised in the appeal and cross-appeal, based on our conclusion that a new trial is warranted, we decline to discuss defendants' claim that the trial judge erred by denying their motion for a directed verdict on plaintiff's failure to accommodate claim.
As to defendants' challenge to the award of punitive damages, we reject the contention that "punitive damages were not awardable as a matter of law." The Supreme Court concluded in Cavuoti v. New Jersey Transit Corp., 161 N.J. 107, 132-33, 735 A.2d 548 (1999), that a public entity may be subject to punitive damages under LAD. See also Green v. Jersey City Bd. of Educ., 177 N.J. 434, 444, 828 A.2d 883 (2003) (a public entity may be held liable for punitive damages in the event of actual participation by upper management or willful indifference).
Pursuant to the Punitive Damages Act (the PDA), N.J.S.A. 2A:15-5.9 to -17, punitive damages can be awarded
only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.
[N.J.S.A. 2A:15-5.12(a).]
Punitive damages are available only in "exceptional cases." Catalane v. Gilian Instrument Corp., 271 N.J.Super. 476, 500-01, 638 A.2d 1341 (App.Div.), certif. denied, 136 N.J. 298, 642 A.2d 1006 (1994). The nature of a defendant's conduct and the probability that the defendant caused the plaintiff's injuries are relevant considerations for the award. Ripa v. Owens-Corning Fiberglas Corp., 282 N.J.Super. 373, 394, 660 A.2d 521 (App.Div.), certif. denied, 142 N.J. 518, 665 A.2d 1111 (1995). "[P]unitive damages for employment discrimination are only appropriate if there is proof not only that the offending conduct is especially egregious but also proof of `actual participation in or willful indifference to the wrongful conduct on the part of upper management.'" Lockley v. Turner, 344 N.J.Super. 1, 19-20, 779 A.2d 1092 (App.Div.2001) (quoting Cavuoti, supra, 161 N.J. at 113, 735 A.2d 548), aff'd in part, modified in part on other grounds, 177 N.J. 413, 828 A.2d 869 (2003). Thus, under the PDA, a plaintiff must *507 demonstrate either a defendant displayed actual malice or acted in a willful and wanton manner.
"Actual malice" is defined as "an intentional wrongdoing in the sense of an evil-minded act," while "[w]anton and willful disregard" is defined as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." N.J.S.A. 2A:15-5.10.
Keeping these principles in mind, in the event a similar situation is presented on retrial of this matter, we briefly comment on the trial judge's inclusion of Dr. Izzi among the proposed NJSP upper management employees for the purpose of finding actionable conduct warranting an award of punitive damages. Dr. Izzi was exonerated at trial of any actions or omissions found to have aided or abetted the acts of discrimination or to have resulted in the intentional infliction of emotional distress. Thus, we conclude it is incongruous to include him as one who actually participated in or was willfully indifferent to the wrongful conduct on the part of upper management for the purpose of punitive damages. Lockley, supra, 344 N.J.Super. at 26-28, 779 A.2d 1092.
Finally, we affirm the trial judge's determination of the scope of plaintiff's actionable damages challenged in his cross-appeal. R. 2:11-2(e)(1)(E).
Reversed and remanded for a new trial.
NOTES
[1] The court previously dismissed Captain Salvatore Maggio from the action.