**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2100
_____

HARRY SWAIN,
                                        Appellant

v.

CITY OF VINELAND
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 09-cv-06188)
District Judge:  Honorable Joseph E. Irenas
_____

Submitted Under Third Circuit LAR 34.1(a)
December 8, 2011
_____

Before: HARDIMAN, BARRY, <u>Circuit Judges</u> and
SLOMSKY,[*] <u>District Judge</u>

(Opinion Filed: January 11, 2012)
_____

OPINION
_____

---

[*] Honorable Joel H. Slomsky, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

BARRY, Circuit Judge

Harry Swain appeals the District Court's order granting summary judgment on his age discrimination and retaliation claims against the City of Vineland ("Vineland"). We will affirm.

I.

Because we write for the parties, who are well acquainted with the case, we recite only the essential facts and procedural history.

A.

Swain began working for Vineland as a police officer in September 1982 and was promoted to sergeant in the street crimes unit in February 2001. At all relevant times, he was over forty years old.

In October 2006, the police department reinstated its previously-disbanded K-9 unit. Captain Paul Letizia sent an email to all supervisors stating that anyone interested in being a dog handler should contact him. Swain replied but was informed that he was not eligible for the position because dog handlers were required to have take-home vehicles. Swain, however, lived approximately thirty-four miles from the police station and, thus, according to Vineland, he did not qualify for a take-home vehicle under the department's policies. The position was given instead to Sergeant Chris Fulcher, who was under forty years old and resided in Vineland, about eight miles from the police station.

On December 3, 2007, Letizia sent another email to all officers stating that he was

2

looking for two sergeants interested in being dog handlers. Swain again replied and stated that he was contemplating a move to Bridgeton, approximately nineteen miles from the police station. When he learned that his application would again be rejected, Swain met with Letizia, who told him that Police Chief Timothy Codispoti was "adamant that the person [who received the position] had to live in Vineland." Swain alleges, however, that Letizia also told him that his age was "the real reason."

Letizia subsequently decided that only patrolmen, not sergeants, could apply for the handler positions and issued another email on December 21. Patrolmen Charles Mackafee (who was thirty-one and resided three miles from the station) and William Bontcue (who was thirty-eight and resided seven miles from the station) were appointed.

Letizia soon learned that Swain was contemplating a discrimination lawsuit and told him to file a written complaint with Internal Affairs ("IA"). Swain declined to do so because he did not expect to "receive a competent or fair investigation from [IA], which has expertise in police misconduct but not EEO matters." Codispoti told Swain to appear for a formal interview with IA regarding his grievance. Swain and his attorney met with IA officers but did not pursue the matter. Instead, Swain's attorney presented IA with a copy of the written charges he filed with the EEOC.

Around this time, Swain and nine other officers were selected for random drug testing. He claims that he was humiliated by the process because he was pulled from his training class and had to give a urine sample "with the door wide open with everybody

3

walking by"—in violation of the New Jersey Attorney General's policy.

Finally, on May 16, 2008, Swain was involved in a vehicle accident while on duty that required him to undergo right shoulder arthroscopy. That September, following complaints of pain, his physician diagnosed him with carpal tunnel syndrome in his left hand, caused by the arthroscopy. Swain was initially scheduled for a carpal tunnel release procedure on October 21, 2008, and four days before the scheduled surgery, Vineland's workers compensation carrier, PMA, requested clarification from Swain's physician. Swain's physician failed to respond. On November 24, 2008, PMA again requested the information. In December, after PMA received the requested information, Swain was approved for surgery, and the surgery was performed on January 6, 2009.

B.

On December 7, 2009, Swain brought suit in the United States District Court for the District of New Jersey under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 623, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12. He asserted age discrimination based primarily on the rejection of his application for the K-9 unit, and retaliation based on that rejection, IA's involvement in the investigation, the delay of his surgery, and "other acts as may be disclosed in discovery." App. at 20. [1] Vineland moved for summary judgment. On April 25, 2011, the District Court granted the motion after concluding that Swain had failed to

---

[1] Swain did not complain of his selection for drug testing until summary judgment, and the District Court did not discuss it in its opinion.

4

make a *prima facie* showing of discrimination because he lived too far from the department to be eligible for a position in the K-9 unit, or of retaliation because the incidents of which Swain complained did not constitute adverse employment actions.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

Our review of the District Court's grant of summary judgment is plenary. *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008). Viewing the facts in the light most favorable to Swain, summary judgment is appropriate only if the record shows "that there is no genuine dispute as to any material fact and [Vineland] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Swain must support his claim by more than a mere scintilla of evidence, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); an inference based on speculation is insufficient. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

### A. Discrimination

Age discrimination claims under the ADEA and NJLAD are analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009); *McDevitt v. Bill Good Builders, Inc.*, 816 A.2d 164, 166 (N.J. 2003). First, Swain must make a *prima facie* showing that (1) he was at least forty years old; (2) he was qualified for the

5

position; (3) he suffered an adverse employment action; and (4) the person who received the position was sufficiently younger to support an inference of discriminatory intent. If he meets this initial burden of production, Vineland must identify a legitimate, nondiscriminatory reason for the adverse employment action, at which point Swain must show that this proffered reason is a pretext for discrimination. At all times, Swain bears the burden of persuasion.

The District Court concluded that Swain failed to make a *prima facie* showing of discrimination because he was not qualified for a position in the K-9 unit. Whether or not that is so, it is clear that he has not produced evidence that he suffered an adverse employment action.

The ADEA defines an adverse employment action as discrimination with respect to the "compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1). It requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). While direct economic harm is probative, so, too, is conduct that substantially decreases one's earning potential or disrupts his working conditions. *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 153 (3d Cir. 1999).

Here, "[n]one of the proffered evidence changes the fact that [Swain] did not suffer an adverse employment action." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971,

976 (3d Cir. 1998). There is no evidence that he was deprived of any "serious and tangible" alteration of his compensation, terms, conditions, or privileges of employment. *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (internal quotation omitted). And, of course, because he was already a sergeant in the street crimes unit, the position of sergeant in the K-9 unit would have been a lateral transfer, which in and of itself does not amount to a significant change in employment status. *See Brown v. Brody,* 199 F.3d 446, 455-56 (D.C. Cir. 1999) (overruled on other grounds); *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir. 1996) ("[A] *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action").

While Swain alleges that the K-9 unit is a "specialized endeavor" with opportunities for career advancement and overtime, Appellant's Br. at 39, he does not contend that his salary, benefits, or prestige would have changed, or assert any specific denial of overtime. Even if the responsibilities of a K-9 sergeant are "significantly different" than those of a street crimes sergeant, *id.* at 37, there is no indication that these different responsibilities are objectively better (*e.g.*, more prestigious or less burdensome). In other words, this is not a case where the transfer that was denied would, in effect, have been a promotion. Indeed, Swain relies only upon his subjective preference for the K-9 position, which is insufficient to establish an adverse employment action. *See Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002).

7

Swain also argues that a K-9 officer earned an additional $18,000 per year in overtime to care for his dog at home. The undisputed facts disclose, however, that most of this overtime was for unrelated activities. In any event, a speculative increase in potential overtime does not qualify as a change in the terms or conditions of employment, particularly where one's current position, as here, offers its own opportunities to earn overtime. Finally, the fact that a take-home police vehicle is necessary so that a K-9 officer can perform the duties of the position surely does not convert the denial of a vehicle to one who is *not* a K-9 officer into an adverse employment action. *See Evans*, 166 F.3d at 153. Summary judgment was appropriately granted on the discrimination claim.

B.    <u>Retaliation</u>

The *McDonnell Douglas* burden-shifting framework also applies to retaliation claims. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). To make out a *prima facie* case, Swain must show that: (1) he engaged in protected activity; (2) Vineland took an adverse action subsequent to such activity; and (3) a causal link exists between the protected activity and adverse action. *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 508-509 (3d Cir. 2004). We agree with the District Court that Swain has not shown that he suffered an adverse action.

A broader definition of adverse action, "extend[ing] beyond workplace-related or employment-related retaliatory acts and harm," applies to retaliation claims than to

8

discrimination claims.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67

(2006).  Swain "must show that a reasonable employee would have found the challenged

action materially adverse, [which means that it] might have dissuaded a reasonable

worker from making or supporting a charge of discrimination."  *Id.* at 68 (internal

quotations omitted).[2] Our analysis focuses not on isolated incidents, but rather on the

"overall scenario."  *Cardenas v. Massey*, 269 F.3d 251, 261 (3d Cir. 2001).

Swain primarily bases his retaliation claim on (1) "[b]eing denied medical

treatment"; (2) IA's involvement in the investigation; and, albeit belatedly, (3) his

selection for drug testing.[3] Even viewing these incidents in the light most favorable to

him, none – singly or in combination – is significant enough to have dissuaded a

reasonable worker from opposing discrimination.

Swain was not denied medical treatment; he admittedly underwent surgery on

January 6, 2009.  Furthermore, he presents no evidence that the three-month delay while

PMA awaited his physician's response to its request for information caused him any

hardship beyond some discomfort or nervousness.

In addition, there was nothing "adverse" about IA's involvement in the

investigation.  Rather, as Swain admits, he was referred to IA so that it could address his

---

[2] The District Court erroneously applied to the retaliation claim the narrow definition of adverse action which applies to discrimination claims.  After *Burlington*, this standard no longer applies to retaliation claims.  Applying the broader definition, however, we reach the same result.

[3] Swain also complains that he was "subjected to a catalogue of lesser, minor indignities."  Appellant's Br. at 23.

discrimination complaint.  Under General Order 14-07, IA receives and investigates "all complaints made against [the police department] or its employees/officers regardless of the source of the complaint." Swain has produced no evidence refuting Vineland's explanation that IA investigates all such complaints, not merely officer misconduct complaints, and no evidence that he was harassed or intimidated during the investigation.

Finally, Swain admits that "[e]very once in a while, they'll pull people" from training class for random drug testing.  He also stated that the results of his test were kept confidential, consistent with the Attorney General's drug testing policy.  Accordingly, there is no genuine dispute that this test was routine, not an adverse action.  Because no reasonable factfinder could conclude that Swain was retaliated against, summary judgment was properly granted.[4]

III.

For the foregoing reasons, we will affirm the order of the District Court.

---

[4] Like the ADEA, the NJLAD prohibits discrimination "in compensation or in terms, conditions or privileges of employment" against an individual because of his age, as well as retaliation for opposing discriminatory practices.  N.J. Stat. Ann. § 10:5-12(a), (d).  State courts "look to federal case law as a key source of interpretive authority" in NJLAD cases.  *Roa v. Roa*, 985 A.2d 1225, 1232 (N.J. 2010) (internal quotation omitted).  While they will deviate when federal standards are not "useful and fair," *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 950 (N.J. 1999), they apply the same definition of adverse action that federal courts do in discrimination and retaliation claims  *See, e.g.*, *Roa*, 985 A.2d at 1235-36; *Victor v. State*, 952 A.2d 493, 504 (N.J. Super. Ct. App. Div. 2008); *El-Sioufi v. St. Peter's Univ. Hosp.*, 887 A.2d 1170, 1184-85 (N.J. Super. Ct. App. Div.

2005).  Accordingly, our analysis applies equally to Swain's state law claims, and we reach the same result as to them.