**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0802-16T3

BRYAN BRANCACCIO,

      Plaintiff-Appellant,

v.

CITY OF HACKENSACK,

      Defendant-Respondent.

_____

Submitted November 16, 2017 — Decided December 5, 2017

Before Judges Simonelli and Haas.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Docket No. L-
8335-14.

Costello & Mains, LLC, attorneys for appellant
(Deborah L. Mains, on the brief).

Pfund McDonnell, PC, attorneys for respondent
(David T. Pfund and Mary C. McDonnell, of
counsel and on the brief).

PER CURIAM

    Plaintiff Bryan Brancaccio appeals from the Law Division's

September 26, 2016 order granting summary judgment and dismissing

his claim that his employer, defendant City of Hackensack,

discriminated against him based upon its perception that he was disabled and unable to work as an "on the line" firefighter in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. We affirm.

We draw the facts from the summary judgment record and view them in a light most favorable to plaintiff, the non-moving party. Polzo v. Cnty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)). The Hackensack Fire Department (Department) consists of approximately 114 firefighters spread between four platoons and one fire prevention bureau. Firefighters assigned to the platoons work twenty-four-hour shifts, working one day and then having the next three days off. This is commonly referred to as "on the line" work and firefighters assigned to a platoon respond to the scene of a fire wearing appropriate equipment and perform the tasks necessary to extinguish a blaze.

Firefighters in the fire prevention bureau inspect buildings for fire code violations. These firefighters work eight-hour shifts for four days each week. All firefighters receive the same salary regardless of their assignment. However, firefighters assigned to the fire prevention bureau receive an additional $1500 annual stipend.

A-0802-16T3

Plaintiff began working for the Department in January 1986. During his career, he primarily worked on the line in a platoon. Plaintiff's duties typically included driving the fire engine and operating the water pump at the scene to suppress the fire.

On May 15, 2012, plaintiff followed Department protocol and submitted a written request to the Fire Chief (the Chief) asking to be transferred from his platoon to the fire prevention bureau. Plaintiff told the Chief he was suffering from double pneumonia and supplied a supporting doctor's note. The Chief approved the transfer and plaintiff joined the bureau.

A few months later, plaintiff submitted a written request asking to be transferred back to a platoon. The Chief granted this request and plaintiff resumed working on the line.

In May 2013, a deputy fire chief encountered plaintiff at a firehouse during his shift. The deputy stated that plaintiff was sitting on the front bumper of an engine, and looked "gray and appeared to have discomfort in breathing." The deputy urged plaintiff to go to a hospital for treatment. Plaintiff refused. Later, a lieutenant checked plaintiff's condition and found that he needed "100% oxygen[.]" Plaintiff then acceded to the lieutenant's request that he go to the hospital for evaluation.

Because plaintiff was the assigned engine driver, and was clearly incapacitated that day, the deputy advised the Chief that

plaintiff endangered his crew and asked that plaintiff be "sent for a fitness for duty test." Following this incident, the Chief met with plaintiff and they agreed that if plaintiff became "ill while on duty in the future, [he would] notify [his] immediate supervisor and take the appropriate measures so as to relieve [himself] from duty by either requesting an ambulance or placing [himself] on sick leave."

In September 2013, plaintiff submitted a written request for a transfer from one platoon to another. The Chief granted this request five days later.

In October 2013, the Department directed plaintiff and other firefighters to take a pulmonary function test required by the Public Employee Occupational Health and Safety Association to determine if they were fit to wear a respirator, which is a self-contained breathing apparatus. The test was administered at the hospital by a doctor.

On October 1, 2013, the doctor found that plaintiff was "not medically fit" to wear a respirator and gave the Department a written certification to this effect. On October 9, 2013, the doctor issued a second statement clarifying that plaintiff was "medically fit" but could "not wear or use a respirator." That same day, the Chief reassigned plaintiff to the fire prevention bureau. This assignment was effective on October 14, 2013.

A-0802-16T3

Plaintiff scheduled an appointment with a private physician. On November 12, 2013, this physician rendered a written report after examining plaintiff. The physician concluded that despite having some underlying medical conditions, "[t]here [was] no pulmonary contraindication to [plaintiff] using a respirator." One day after receiving this report, the first doctor issued a third statement finding that plaintiff was medically fit to wear a respirator.

Thereafter, plaintiff continued working in the fire prevention bureau until he retired on January 1, 2016, and he never submitted a written request to return to a platoon. Because he was in the bureau, plaintiff received the extra $1500 stipend each year.

The Chief testified at his deposition that plaintiff "was doing an extraordinarily good job for us" in the fire prevention bureau. The Chief also stated that the bureau was "in dire need of inspectors" and, because the bureau was "several hundred inspections behind[,] . . . we needed the manpower in there." At his deposition, plaintiff agreed the Department was not "up to date in its fire inspections" and that "there was a shortage of inspectors[.]"

On September 2, 2014, plaintiff filed his complaint under the LAD and alleged that defendant discriminated against him by not

placing him "back on the line" in a platoon after he was cleared to wear a respirator in November 2013. Plaintiff alleged that defendant took this discriminatory action based on its perception that he had a disability.

Although plaintiff received the same salary as he would have had he been assigned to a platoon, plus an extra $1500 annual stipend,[1] plaintiff alleged that he missed out on the "massive line firefighter overtime" that was available to firefighters assigned to a platoon. In addition, plaintiff argued that when he was assigned to a platoon, he could perform per diem fire inspection work for the Department on his days off. This work paid $25 per hour and plaintiff estimated that before he was assigned to the fire prevention bureau, he was able to work fifty to one hundred hours a month as a per diem fire inspector. Plaintiff did not provide any documentation or expert testimony to support these claims.

Defendant subsequently filed a motion for summary judgment. Following oral argument, Judge John Langan, Jr. rendered a comprehensive written opinion granting summary judgment to defendant and dismissing the complaint.

---

[1] Plaintiff's annual salary was $134,000 at the time of his retirement.

A-0802-16T3

The LAD "prohibits employers from discriminating against employees based upon disability or perceived disability." Myers v. AT&T, 380 N.J. Super. 443, 452 (App. Div. 2005), certif. denied, 186 N.J. 244 (2006). Proof that discrimination based on that perception led to an adverse employment action is required. Ibid.

In reviewing plaintiff's claim under the LAD, Judge Langan applied the familiar burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668, 677-78 (1973). Under this test,

> a plaintiff must first present the prima facie elements required in any LAD disability discrimination claim, that is: (1) [the] plaintiff was disabled within the meaning of the statute; (2) [the] plaintiff was qualified to perform the essential functions of the position of employment; and (3) [the] plaintiff suffered an adverse employment action because of the disability. Each of these elements must be shown, including proof of some material adverse change in the terms and conditions of employment.
>
> [Victor v. State, 401 N.J. Super. 596, 614 (App. Div. 2008), (citation omitted), aff'd in part, modified in part, 203 N.J. 282 (2010).]

If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to produce evidence that there was "a legitimate, non-discriminatory reason for the adverse employment action[.]" Myers, supra, 380 N.J. Super. at 452. If the employer satisfies this burden, plaintiff

A-0802-16T3

must then demonstrate "that the reason so articulated [was] not the true reason for the adverse employment action, but [was] instead a pretext for discrimination." Ibid.

With regard to the first prong of the test, Judge Langan found that defendant did not dispute that it perceived plaintiff to be disabled at the time the Chief transferred him to the fire prevention bureau because plaintiff failed the pulmonary test and was unable to wear a respirator. However, the judge held that plaintiff did not suffer any adverse employment action as a result of this reassignment. Plaintiff continued to earn the same salary as firefighters assigned to platoons, and he also received an additional $1500 stipend as a member of the bureau. Citing Victor, supra, 401 N.J. Super. at 615, the judge noted that "a job reassignment, with no corresponding reduction in wages or status is insufficient to qualify as an adverse employment action."

Judge Langan next rejected plaintiff's claim that his alleged loss of overtime and the opportunity to perform per diem work on his days off constituted an adverse employment action. The judge found that plaintiff

> has not presented any evidence in opposition
> to . . . [d]efendant's motion for summary
> judgment to support his claim of lost
> overtime. Plaintiff has no expert report on
> his lost overtime wages. Accordingly,
> [plaintiff's] lost wages in the form of his

overtime potential are mere speculation on his part.

The judge also concluded that plaintiff's assertion that he would have worked additional hours as a per diem fire inspector if he had been assigned to a platoon was likewise "too speculative[,]" especially because he presented no concrete proof that "this work [was] still available" at the Department.

Based upon his finding that plaintiff could not demonstrate that defendant took any adverse employment action against him, Judge Langan granted defendant's motion for summary judgment. However, the judge also observed that even if there had been an adverse employment action, plaintiff still failed to demonstrate that defendant's reason for continuing to use him as a fire inspector was a pretext for discrimination. As the judge explained,

> [d]efendant . . . was experiencing a shortage of fire inspectors and as a result did not, of its own volition, transfer [p]laintiff out of the understaffed fire prevention bureau back to the firefighter line because of [its] critical need to have qualified fire inspectors to avoid falling behind in [its] inspections to keep the [c]ity safe [and this was] more than a legitimate reason to keep . . . [p]laintiff in the [f]ire [p]revention [b]ureau.

This appeal followed.

On appeal, plaintiff argues that the judge erred in granting summary judgment to defendant and dismissing his LAD claim. We disagree.

Our standard of review on appeal is well established. We review a trial court's order granting summary judgment de novo, applying the same standard the trial court applies, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017).

We have considered plaintiff's contentions in light of the record and applicable legal principles. We are satisfied that Judge Langan properly granted summary judgment to defendant, and affirm substantially for the reasons expressed in his cogent and thoughtful written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0802-16T3