**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3959-15T1

FRANCES GRAU,

        Plaintiff-Appellant,

v.

AHS HOSPITAL CORP., ATLANTIC
HEALTH SYSTEMS, INC., and
MORRISTOWN MEDICAL CENTER,

        Defendant-Respondent.

_____

        Submitted May 15, 2017 — Decided  June 2, 2017

        Before Judges Haas and Currier.

        On appeal from Superior Court of New Jersey,
        Law Division, Morris County, Docket No. L-695-
        14.

        Colin M. Page & Associates, attorneys for
        appellant (Mr. Page and Evan Silagi, on the
        briefs).

        Carmagnola & Ritardi, LLC, attorneys for
        respondent (Steven F. Ritardi, of counsel and
        on the brief; Sean P. Joyce and Philip A.
        Portantino, on the brief).

PER CURIAM

    Plaintiff Frances Grau appeals from the Law Division's April

7, 2016 order granting summary judgment and dismissing her claim

that her employer, defendant Atlantic Health Systems, Inc. ("AHS"), failed to accommodate her disability in violation of New Jersey's Law Against Discrimination, ("LAD"), N.J.S.A. 10:5-1 to -49. We affirm.

The following facts are derived from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in a light most favorable to plaintiff, the non-moving party. Polzo v. Cnty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

Plaintiff worked for twenty-six years as a nursing assistant in a cardiac unit at Morristown Medical Center, which is part of the AHS system of hospitals. As a nursing assistant, plaintiff's essential job functions involved the direct care of patients.

More specifically, plaintiff was responsible for assisting patients with activities of daily living, bathing and helping patients with their hygiene maintenance, making beds, turning and positioning patients as needed, maintaining and stocking linen carts, and moving, maintaining, and returning all equipment used in patient care. In order to perform these functions, plaintiff was required to be able to occasionally lift up to 100 pounds of weight, while more frequently lifting ten to fifty pounds. She also needed to be able to push stretchers, chairs, and empty beds

and, as part of a team, a patient while in a bed, for distances of hundreds of feet.

On January 17, 2013, plaintiff fell at work. A month later, she was granted leave due to complaints of shoulder pain. On May 3, 2013, plaintiff underwent shoulder surgery. AHS granted plaintiff's request for additional leave through June 24, 2013.

Plaintiff's manager testified at a deposition that AHS could not redistribute plaintiff's duties to other employees due to the existing staff's already heavy workload. While plaintiff was on leave, AHS backfilled her position by retaining per diem staff and having other staff members work overtime. However, if plaintiff could no longer perform her nursing assistant responsibilities, and still worked on the unit, the manager testified that AHS would have to hire a new employee for plaintiff's position, above and beyond the cardiac unit's budget, to cover the work plaintiff could not perform.

At the end of her leave period, plaintiff's treating physician told AHS that plaintiff could only return to work if she was placed on light duty and prohibited from lifting more than five pounds of weight. In addition, plaintiff was not able to engage in any pushing, pulling, or lifting overhead activities.

In accordance with its Transitional Duty Program and Return to Work ("RTW program") policy, AHS temporarily assigned plaintiff

to sedentary, light-duty desk work in the Infection Control Unit beginning on June 24, 2013. The policy provided that this light duty was only available for ninety days.

Because plaintiff's physician told her that she could no longer perform the duties of a nursing assistant, AHS worked with plaintiff to try to find her a new position that did not require lifting. AHS provided plaintiff with training for Unit Representative and Registrar clerical positions, and extended the period for which she was eligible for the RTW program to enable her to complete this training. However, plaintiff testified that she was not able to "keep up with the pace" of the courses due, in part, to her lack of familiarity with computers. AHS also assisted plaintiff in the preparation of a new resume, provided her with a list of positions that might be available, and advised her on how to apply to the proper offices.

In October 2013, plaintiff participated in a Kinematic Functional Capacity Evaluation and Work Ability Assessment to determine her ability to perform the essential duties of a nursing assistant. The assessment concluded that because of her shoulder injury, plaintiff could not perform these duties due to the severe limitations on her capacity to lift, pull, and push the amount of weight needed to do this job.

A-3959-15T1

Pursuant to its RTW program policy, AHS discontinued plaintiff's light duty assignment on October 24, 2013, and placed her in the Health Insurance Cost Center, which enabled her to maintain her health insurance. AHS's Employee Relations Manager ("ER manager") met with plaintiff to attempt to find her another job within the hospital system. However, plaintiff's physical limitations, coupled with her lack of technology or computer knowledge or experience, severely limited her options at AHS.

Each week, the ER manager reviewed a list of open positions to determine if plaintiff was qualified for them. However, due to the many restrictions on plaintiff's ability to work, the ER manager was not able to find an appropriate match. A manager in another AHS department also helped plaintiff during this period, but plaintiff was unable to locate a position for which she was qualified.

Plaintiff testified that she heard that there were "sitter/spotter" positions available at the hospital. According to plaintiff, an employee acting as a "sitter/spotter" would monitor patients who were at high risk of injuring themselves because of confusion or disorientation. However, there were no positions like this within AHS. Instead, the monitoring duties plaintiff was referring to were encompassed within the normal

responsibilities of a nursing assistant, which plaintiff could no longer perform due to her shoulder injury.

Plaintiff testified that although she would have liked to continue working, she chose to retire from her position and, with the assistance of her brother, she completed the necessary forms to do so. In February 2014, her retirement was approved. Shortly thereafter, plaintiff successfully applied for Social Security disability ("SSD") benefits. In her application for SSD, plaintiff asserted that she could not lift over five pounds and that her condition affected, among other things, her ability to walk, lift, bend, and reach.

On March 17, 2014, plaintiff filed a one-count complaint against AHS, claiming that her former employer failed to accommodate her disability in violation of the LAD. AHS filed an answer denying plaintiff's allegation and, at the conclusion of discovery, it filed a motion for summary judgment.

Following oral argument, Judge Stuart Minkowitz rendered a thorough written opinion granting AHS's motion and dismissing plaintiff's complaint. The judge found that plaintiff's shoulder injury qualified as a disability under the LAD. However, the judge further found that plaintiff failed to "show that she can perform the essential functions of her job either with or without

an accommodation." Therefore, the judge concluded that AHS did not violate the LAD.

In explaining his decision, Judge Minkowitz stated:

> A [n]ursing [a]ssistant must physically assist patients, use medical equipment and [clean and maintain] patients' rooms. As specifically reflected in AHS's uncontested description of the essential and marginal functions of a [n]ursing [a]ssistant position, [p]laintiff must lift patients from their beds to assist with hygiene; transfer patients from beds to chairs; and turn and reposition bedfast patients to prevent bedsores. This requires physical manipulation of patients and supplies over twenty-five pounds, more specifically up to one hundred pounds occasionally and fifty pounds frequently, and this too is reflected in AHS's uncontested description of the essential and marginal functions of a [n]ursing [a]ssistant position. . . . AHS reasonably arrived at the conclusion that [p]laintiff could not perform the essential functions of a [n]ursing [a]ssistant as she admits at her deposition and in an email to [an AHS supervisor] that her shoulder injury was a permanent condition that prevented her from working as a [n]ursing [a]ssistant.

The judge continued:

> Plaintiff also admits that she has a lifting restriction of twenty pounds or less. Moreover, [plaintiff's treating physician's] medical opinion, and the evaluation that AHS ordered confirmed th[e] conclusion [that plaintiff could not perform the essential functions of the nursing assistant position]. Plaintiff suggests a "sitter" position as an accommodation, yet this position also requires [p]laintiff [to] be able to lift and manipulate over twenty-five pounds as [acting as a] "sitter" is a part of a [n]ursing

A-3959-15T1

[a]ssistant position. . . . Therefore, because [p]laintiff cannot prove that she can perform the essential functions of a [n]ursing [a]ssistant position either with or without an accommodation, she cannot prove a prima facie element of her failure to accommodate claim. Accordingly, AHS cannot be found liable under [the] LAD[.]

This appeal followed.

On appeal, plaintiff contends that she established a prima facie case of failure to accommodate under the LAD, and the judge erred by granting AHS's motion for summary judgment and dismissing her complaint. We disagree.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). "That standard mandates that summary judgment be granted 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Ibid. (quoting R. 4:46-2(c)).

[A] determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent

evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

[Brill, supra, 142 N.J. at 540.]

"To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div.), certif. denied, 211 N.J. 608 (2012)), certif. denied, 220 N.J. 269 (2015). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005) (citations omitted). "When no issue of fact exists, and only a question of law remains, [we] afford[] no special deference to the legal determinations of the trial court." Templo Fuente De Vida, supra, 224 N.J. at 199 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The LAD prohibits an employer from denying "an otherwise qualified person with a disability" the opportunity to obtain or maintain employment "solely because" he or she is disabled. N.J.S.A. 10:5-29.1. Such action is considered an unlawful employment practice "unless it can be clearly shown that a person's disability would prevent such person from performing a particular

job."  Ibid.  The LAD "prevents only unlawful discrimination against disabled individuals" and "acknowledges the authority of employers to manage their own businesses."  Zive v. Stanley Roberts, Inc., 182 N.J. 436, 446 (2005).  Ultimately, "[w]hat makes an employer's personnel action unlawful is the employer's intent."  Ibid.

"All employment discrimination claims require the plaintiff to bear the burden of proving the elements of a prima facie case."  Victor v. State, 203 N.J. 383, 408 (2010).  "[T]he elements of the prima facie case vary depending upon the particular cause of action."  Ibid.  "The evidentiary burden at the prima facie stage 'is rather modest: it is to demonstrate to the court that [the] plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination could be a reason for the employer's action.'"  Zive, supra, 182 N.J. at 447 (quoting Marzano v. Comput. Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996)).

In a reasonable accommodation case, a plaintiff must prove that he or she (1) was disabled within the meaning of the LAD; (2) "was qualified to perform the essential functions of the position of employment," with or without reasonable accommodation; and (3) "suffered an adverse employment action because of the disability."  Victor v. State, 401 N.J. Super. 596, 614-15 (App. Div. 2008), aff'd in part, modified in part, 203 N.J. 383 (2010); see also

Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 91 (App. Div. 2001).

The LAD also prohibits the discriminatory discharge of an employee based on a disability unless the employer "reasonably conclude[s]" that the employee's disability "reasonably precludes the performance of the particular employment." Jansen v. Food Circus Supermarkets, Inc., 110 N.J. 363, 367 (1988) (quoting N.J.S.A. 10:5-4.1); see also Raspa v. Office of Sheriff of Gloucester, 191 N.J. 323, 338 (2007); Potente v. Cnty. of Hudson, 187 N.J. 103, 110-11 (2006). The LAD "leave[s] the employer with the right to fire or not to hire employees who are unable to perform the job, 'whether because they are generally unqualified or because they have a handicap that in fact impedes job performance.'" Jansen, supra, 110 N.J. at 374 (quoting Andersen v. Exxon Co., 89 N.J. 483, 496 (1982)).

Thus, an employer is not required to accommodate an employee who cannot perform his or her essential job functions even with an accommodation. Hennessey v. Winslow Township, 368 N.J. Super. 443, 452 (App. Div. 2004), aff'd, 183 N.J. 593 (2005); see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 150 (3d Cir. 2004) (affirming summary judgment for employer because LAD does not require employer to accommodate employee who "was unable to perform any of the functions of his job"); Van de Pol v. Caesars

<u>Hotel Casino</u>, 979 <u>F. Supp.</u> 308, 313 (D.N.J. 1997) (granting summary judgment to employer because the LAD does not require employer to accommodate employee who "was not physically capable of safely performing any of his [or her] duties").

Generally, an employer must initiate a good faith "interactive process" regarding accommodations before determining that the employee's disability reasonably precludes performance of her essential job functions. <u>Tynan v. Vicinage 13 of Superior Court</u>, 351 <u>N.J. Super.</u> 385, 400 (App. Div. 2002). Employers can demonstrate such a good faith attempt by "meet[ing] with the employee[,] . . . request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered [the] employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome." <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 <u>F.</u>3d 296, 317 (3d Cir. 1999).

Participation in the interactive process is not a one-way street. It "is the obligation of both parties," and the "employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals." <u>Ibid.</u>

A-3959-15T1

Proof of the employer's failure to engage in the interactive process alone is not sufficient to meet the employee's prima facie burden. Donahue v. Consol. Rail Corp., 224 F.3d 226, 234 (3d Cir. 2000); Victor, supra, 401 N.J. Super. at 614. The employee still has the burden to prove the basic essential elements of a discrimination case, and must show that reasonable accommodation for her disability was possible even where the employer acted wrongfully in failing to engage in the interactive process to find such an accommodation. Victor, supra, 401 N.J. Super. at 614-15. As part of that burden, the employee must prove that he or she was qualified to perform the job and that "the accommodation could have been reasonably achieved." Id. at 615; see also Potente, supra, 187 N.J. at 110.

However, after a complaint is filed, the employee is required, as part of his or her burden of proof, to provide examples of what the employer could have done to accommodate their specific needs. Donahue, supra, 224 F.3d at 234-35. Where a plaintiff is unable to show that a reasonable accommodation existed, "the employer's lack of investigation into reasonable accommodation is unimportant." Id. at 233; Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997).

Further, if an employee requests a transfer to another position, the employee must prove that (1) "there was a vacant,

A-3959-15T1

funded position" available; (2) "the position was at or below the level of [the employee's] former job"; and (3) the employee "was qualified to perform the essential duties of this job with reasonable accommodation." Donahue, supra, 224 F.3d at 230; see also Mengine v. Runyon, 114 F.3d 415, 418 (3d Cir. 1997). "[A]n employer is not required to 'bump' another employee in order to reassign a disabled employee to that position." Cravens v. Blue Cross & Blue Shield, 214 F.3d 1011, 1019 (8th Cir. 2000).

Applying these standards, and considering the facts in the light most favorable to plaintiff, we are satisfied that Judge Minkowitz properly granted summary judgment to AHS, and affirm substantially for the reasons expressed in his comprehensive April 7, 2016 written decision. We add the following brief comments.

The record fully supports Judge Minkowitz's finding that even with an accommodation, plaintiff was unable to perform the essential duties of the nursing assistant position or other patient care jobs that might have been available at AHS prior to plaintiff's retirement. Because of her shoulder injury, plaintiff could no longer lift, push, or pull the amount of weight necessary to complete her assigned tasks. There were no permanent light duty positions available and, because plaintiff could not perform nursing assistant functions, AHS needed to hire a new employee to take her place.

A-3959-15T1

Plaintiff also failed to establish that there were other positions available within the hospital system that she could perform. AHS attempted to train plaintiff for administrative positions, but she was unable to complete the required courses or operate a computer. Contrary to plaintiff's contention, the record simply does not support her claim that she could have been retained as a "sitter" because there was no such position at AHS.

Plaintiff contends that AHS failed to participate in the interactive process. However, this argument ignores the many attempts AHS made to help plaintiff secure a non-patient-care position in the hospital system prior to her decision to retire. In addition to the training AHS offered plaintiff to transition to a new, administrative position, the ER manager reviewed available positions each week in order to determine whether plaintiff was suited for them. In spite of AHS's efforts, plaintiff was unable to identify any specific vacant position that AHS could have offered her as an accommodation.

Because plaintiff failed to demonstrate, as a matter of law, that she could perform her essential job functions even with an accommodation, Judge Minkowitz properly granted AHS's motion for summary judgment and dismissed plaintiff's complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3959-15T1