**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0888-23

ROBERT BERNARD,

     Plaintiff-Appellant,

v.

JENNIFER WEBB-MCRAE,
HAROLD SHAPIRO,
RICHARD NECELIS, and
RONALD CUFF, individually
and in their official capacities,
and CUMBERLAND COUNTY,
a New Jersey Municipal
Corporation,

     Defendants-Respondents.

_____

Submitted April 2, 2025 – Decided August 19, 2025

Before Judges Mayer and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0243-20.

George J. Cotz, attorney for appellant.

Barker, Gelfand, James & Sarvas, PC, attorneys for respondents (Vanessa E. James, on the brief).

PER CURIAM

Plaintiff Robert Bernard appeals from three Law Division orders: (1) the September 1, 2023 order granting summary judgment in favor of defendants Jennifer Webb-McRae, Harold Shapiro, Richard Necelis, Ronald Cuff, and County of Cumberland and dismissing count one of the third amended complaint alleging retaliation under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, and the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2 for his support of a coworker's sexual harassment complaint; (2) the November 2, 2023 order granting summary judgment in favor of defendants and dismissing count two of the third amended complaint alleging retaliation under the NJCRA for plaintiff's filing of a false certification in a separate federal court action against defendants; and (3) the November 3, 2023 order denying his motion to vacate the September 1, 2023 order.[1] We affirm.

I.

Plaintiff was a detective at the Cumberland County Prosecutor's Office (CCPO). He was assigned to the Narcotic Task Force which later became the Organized Crime Bureau at CCPO. The individual defendants were employed

---

[1] Plaintiff's amended case information statement (CIS) does not list the November 2, 2023 order. We consider the order because both parties addressed the November 2, 2023 order in their merits brief.

A-0888-23

at CCPO. Webb-McRae was the Cumberland County Prosecutor, Shapiro was the First Assistant Prosecutor, Necelis was the Chief of Detectives, and Cuff was a Special Agent.

In April 2013, plaintiff's colleague L.W.[2] initiated a civil action against Cumberland County alleging sexual harassment and hostile work environment caused by Sergeant George Chopek. CCPO investigated L.W.'s allegations. As part of the investigation, plaintiff was interviewed by Necelis. During the interview, plaintiff corroborated some of L.W.'s claims. In June 2016, L.W. settled her civil suit against the county.

In October 2015, plaintiff attended a strategy meeting about a planned wiretap investigation to be supervised by Shapiro. The attendees discussed which detective should be identified as the affiant on affidavits for the necessary warrants. Shapiro considered naming plaintiff as the affiant detective. However, when Shapiro reviewed plaintiff's internal affairs records, he discovered the results of a 2012 investigation regarding plaintiff's signature on a voucher for a payment to a confidential informant. That investigation, which was a component of a larger investigation into voucher practices at CCPO, found plaintiff displayed a lack of candor when he signed a voucher as a witness.

---

[2] We use initials to protect L.W.'s privacy.

Shapiro determined plaintiff's lack of candor finding would require a "Brady disclosure" if he were the affiant for the search warrants. Under Brady v. Maryland, 373 U.S. 83 (1963), the State would be required to disclose plaintiff's disciplinary record to criminal defense counsel and likely result in the use of that disclosure to impeach plaintiff's testimony were he to appear as a witness for the State in a resulting criminal case. Therefore, Shapiro determined plaintiff would not be an affiant in the wiretap investigation. Notably, CCPO determined four other detectives required Brady disclosures as a result of the 2012 voucher investigation.

In November 2015, plaintiff was assigned to assist with the execution of a search warrant at a residence. The warrant targeted an incorrect address.

In February 2016, Chopek's attorney raised the Brady disclosure issue with respect to plaintiff's testimony at the disciplinary hearing relating to L.W.'s harassment claims. The harassment charges against Chopek were not sustained.

On August 1, 2016, plaintiff was reassigned to the Grand Jury Unit (GJU). He alleged the transfer was retaliation for his support of L.W.'s allegations of sexual harassment and hostile work environment. Although the transfer was to a lateral position with no loss in salary or benefits, plaintiff alleged a transfer to GJU is widely regarded by CCPO detectives as a disciplinary or punitive

4

assignment, with little opportunity for advancement or overtime. Plaintiff alleged the transfer was ordered or approved by Webb-McRae, Shapiro, and Necelis. Defendants established plaintiff was transferred along with twenty-three other CCPO employees in an officewide reorganization and in furtherance of Necelis's management prerogative to rotate detectives through various units to expose them to all facets of CCPO operations. In addition, it is undisputed plaintiff never applied for a promotion.

Also in August 2016, plaintiff was informed he was the target of an internal affairs investigation arising from the execution of the November 2015 search warrant at the wrong residence.

In August 2017, plaintiff was informed he was the target of an internal affairs investigation concerning the exposure of the identity of a confidential informant during a separate investigation. Cuff told plaintiff the accusation in that investigation had been determined to be unfounded. Plaintiff claims he was not timely advised of that investigation and did not receive the required notification that he was a target.

In June 2018, plaintiff was advised he was the target of another internal affairs investigation concerning an accusation he lost or otherwise mishandled surveillance photos. Plaintiff showed internal affairs investigators where the

A-0888-23

photos were digitally stored and properly saved. In October 2018, plaintiff was advised the allegation triggering that investigation was unfounded.

On September 12, 2017, plaintiff filed a complaint against defendants in the United States District Court. He alleged defendants: (1) subjected him to retaliatory action under the First Amendment, 42 U.S.C.A. § 2000e, the LAD, and the NJCRA for supporting L.W.'s harassment allegations by reassigning him to the GJU an initiating internal affairs investigation against him; and (2) engaged in a conspiracy to deprive him of due process in violation of 42 U.S.C.A. § 1985; and (3) denied him due process in violation of 42 U.S.C.A. § 1983.

During nearly two years of discovery in the federal action, defendants produced more than 5,700 documents. Plaintiff deposed all named defendants, as well as another CCPO detective. He produced no documents in response to defendants' discovery requests, claiming he had no responsive documents.

Defendants moved for summary judgment in the federal action. In opposition to the motion, plaintiff submitted a certification containing false information. Plaintiff's attorney conceded the certification included false statements, claimed he was responsible for putting the false information in the

6

certification, and said he pressured plaintiff to review and sign the certification quickly to meet a filing deadline.

The District Court granted defendants' motion for summary judgment on the federal claims and declined to exercise jurisdiction over plaintiff's pendant State law claims.

CCPO thereafter initiated an internal affairs investigation based on plaintiff's false certification in the federal action. Plaintiff alleged the certification was a petition for redress under the First Amendment and could not form the basis of a disciplinary charge. CCPO sustained the charge and issued plaintiff a written reprimand.

On April 19, 2020, plaintiff filed this action in the Law Division. He realleged his LAD and NJCRA retaliation claims. Ultimately, plaintiff filed a third amended complaint which alleged two claims. Plaintiff alleged defendants subjected him to retaliation: (1) under the LAD for testifying in support of L.W.'s harassment claims by transferring him to the GJU and initiating internal affairs allegations against him (count one); and (2) under the NJCRA by initiating the internal affairs investigation of the false certification he filed in the federal action in violation of his First Amendment rights (count two).

After discovery, defendants moved for summary judgment. On August 31, 2023, the court issued an oral decision granting the motion as to count one and denying the motion without prejudice as to count two.

With respect to count one, the court found no jury could reasonably find plaintiff suffered an adverse employment action, thereby negating his LAD claim. The court found it was undisputed plaintiff was laterally transferred as part of an officewide reorganization with no loss of pay or demotion in title. In addition, the court found plaintiff produced no evidence supporting his claim that the transfer resulted in a loss of opportunity to earn overtime pay. The court also found CCPO was ethically obligated to issue a Brady disclosure with respect to plaintiff's lack of candor associated with his execution of the voucher certification. The disclosure, the court found, did not result in a loss in pay or demotion in title for plaintiff. Finally, the court found it was undisputed plaintiff ultimately was transferred from the GJU to another unit at which he enjoys working.

With respect to count two, the court found defendants' argument that no jury could find they violated plaintiff's First Amendment rights when they disciplined him for filing a false certification in the federal action did not match the allegations of the amended complaint. The court, apparently based on the

8

second amended complaint and not the third amended complaint, found count two did not concern the filing of a certification but the alleged exercise of plaintiff's First Amendment rights when he testified in support of L.W.'s sexual harassment complaint at the internal hearing. A September 1, 2023 order memorialized the motion court's decision.

Defendants subsequently moved for reconsideration of the court's denial of their motion for summary judgment on count two of the third amended complaint. On November 2, 2023, the court issued an oral decision granting defendants' motion. The court concluded it had reviewed an outdated version of the complaint when it decided defendants' first summary judgment motion. Having reviewed count two of the third amended complaint, the court found plaintiff could not establish an NJCRA First Amendment claim based on the written reprimand he received for filing a false certification in the federal action. The court reasoned that a plaintiff must suffer retaliation for speaking on a matter of public concern in order to establish a violation of the First Amendment. Plaintiff's filing of a false certification, however, was not a matter of public concern, but an ethical transgression in his private capacity. A November 2, 2023 order memorialized the motion court's decision.

Plaintiff moved pursuant to R. 4:50-1 to vacate the September 1, 2023 order. On November 3, 2023, the court issued an oral decision denying plaintiff's motion. The court, in effect, considered the motion as one for reconsideration of the September 1, 2023 order and rejected plaintiff's argument it overlooked his claim to have suffered an adverse employment action. The court again concluded plaintiff produced no proof he suffered a loss of overtime because of his lateral transfer. This appeal followed.

Plaintiff argues the motion court erred when it: (1) found he could not prove he suffered an adverse employment action when he was laterally transferred; (2) failed to consider whether he raised genuine issues of material fact with respect to being subjected to a hostile work environment; and (3) failed to consider whether he raised genuine issues of material fact with respect to the pretextual nature of defendants' actions

II.

We review a grant of summary judgment de novo, applying the same standard as the motion court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that

A-0888-23

the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the motion court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404

11

N.J. Super. 415, 426 (App. Div. 2009). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

A.    Adverse Employment Action.

The goal of the LAD is "nothing less than the eradication of the cancer of discrimination." Raspa v. Off. of Sheriff of Cnty. of Gloucester, 191 N.J. 323, 335 (2006) (quoting Fuchilla v. Layman, 109 N.J. 319, 334 (1988)). Strong public policy reasons support this goal. N.J.S.A. 10:5-3 ("[D]iscrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and foundation of a free democratic State . . . ."). "The law is thus intended to protect 'the civil rights of individual aggrieved employees' as well as 'the public's strong interest in a discrimination-free workplace.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 9 (2021) (quoting Lehmann v. Toys 'R' Us, 132 N.J. 587, 600 (1993)). Accordingly, "[t]he LAD is remedial legislation that should be liberally construed to advance its purposes." Rios, 247 N.J. at 10.

Our courts have adopted the three-step burden shifting analysis the United States Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S.

792 (1973) to analyze claims under the LAD. See e.g., Goodman v. London Metals Exch., Inc., 86 N.J. 19, 31-32 (1981); Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 82-83 (1978). To state a prima facie case of retaliation, a "plaintiff must show that: 1) [he or] she was engaged in a protected activity known to [the employer]; 2) [he or] she was thereafter subjected to an adverse employment decision by [the employer]; and 3) there was a causal link between the two." Royster v. N.J. State Police, 439 N.J. Super. 554, 575 (App. Div. 2015).

"[A]n employer's adverse employment action must rise above something that makes an employee unhappy, resentful[,] or otherwise cause an incidental workplace dissatisfaction." Victor v. State, 401 N.J. Super. 596, 616 (App. Div. 2008). Actions impacting "wages" or "benefits," or that "result in direct economic harm" and "noneconomic actions that cause a significant, non-temporary adverse change in employment status or the terms and conditions of employment" constitute adverse employment actions. Ibid. See e.g., Beasley v. Passaic Cnty., 377 N.J. Super. 585, 609 (App. Div. 2005) (withholding incremental pay increases over a period of years); Durham Life Ins. Co. v. Evans, 166 F.3d 139, 144 (3d Cir. 1999) (loss of resources necessary to perform

A-0888-23

job functions); <u>Green v. Jersey City Bd. of Educ.</u>, 177 N.J. 434, 448 (2003) (continued unjustified poor evaluations).

We see no error in the motion court's conclusion plaintiff did not create a genuine issue of material fact with respect to whether he suffered an adverse employment action. Plaintiff's transfer was lateral, with no loss of wages or demotion in title. While plaintiff alleged the transfer deprived him of opportunities to earn overtime, he produced no evidence supporting that claim apart from a bald assertion in his certification. Plaintiff never applied for a promotion, which negates any claim that the transfer had a negative effect on his promotional opportunities.

In addition, plaintiff claimed a position in GJU was perceived by other detectives as not prestigious and likely a punishment for misconduct. Yet, plaintiff produced no evidence the opinions he described were widely held and, if so, justified or relevant to the adverse action analysis.

Similarly, plaintiff produced no proof Shapiro's determination plaintiff was subject to a Brady disclosure as a result of a lack of candor revealed during the 2012 investigation into his signature on a voucher was an adverse employment action. A Brady disclosure is a constitutionally required notification to a defendant of potentially exculpatory evidence relating to the

veracity of a law enforcement officer involved in investigating criminal charges against that defendant. The need for a Brady disclosure if plaintiff were to be an affiant on a search warrant application or witness in court is not a discretionary decision by CCPO management, but a constitutional mandate. In addition, the CCPO did not alter plaintiff's position, pay, or benefits after the lack of candor finding. Notably, four other detectives were determined to be subject to Brady disclosures as a result of the voucher investigation.

As the motion court found, in the absence of evidence of an adverse employment action, plaintiff cannot establish he was subject to unlawful retaliation under the LAD for engaging in the protected activity of supporting L.W.'s harassment complaint.

In light of plaintiff's failure to raise a genuine issue of material fact with respect to whether he was subjected to an adverse employment action, we need not address whether he produced sufficient evidence on which a jury could reasonably find the transfer was pretextual or his support of L.W.'s harassment complaint was the cause of his transfer. Even if a jury were to find in plaintiff's favor on those factors, the absence of a genuine issue of material fact with respect to plaintiff being subjected to an adverse employment action justified

15

entry of summary judgment in favor of defendants on count one of the third amended complaint.

### B. Hostile Work Environment.

To establish a cause of action under the LAD based on hostile work environment, plaintiff must satisfy four elements:

> Specifically, [he] must show that the complained-of conduct (1) would not have occurred but for [his] protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive.
>
> [Shepherd v. Hunterdon Dev. Ctr., 174 N.J. 1, 24 (2002).]

The inquiry into what is severe or pervasive is intwined with whether a reasonable person would believe the conditions of their employment are altered and the working environment is hostile. Lehmann, 132 N.J. at 604.

The LAD is not intended to be a general workplace civility code. Discourtesy or rudeness should not be confused with gender discrimination. Herman v. Coastal Corp., 348 N.J. Super. 1, 21 (App. Div. 2002); see also Shepherd, 174 N.J. at 25. The burden of proving discrimination "remains with the employee at all times." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450 (2005).

A-0888-23

Although not addressed by the motion court, we agree with defendants' argument plaintiff failed to create a genuine issue of material fact with respect to whether he was subject to a hostile work environment. In essence, plaintiff argues his lateral transfer, subsequent internal affairs investigations, and instances in which he was ignored by supervisors who were making small talk with other CCPO employees constituted a hostile work environment. Plaintiff, however, produced no evidence in support of his claims. As noted above, the lateral transfer was not an adverse employment action. Plaintiff produced no evidence the internal affairs investigations were unwarranted or pretextual. The instances of arguably uncivil behavior by plaintiff's supervisors appear to have been sporadic and lack evidentiary support beyond plaintiff's self-serving statements. No reasonable jury could find plaintiff was subjected to a hostile work environment based on the summary judgment record.

C.    NJCRA First Amendment Claim.

The NJCRA provides in relevant part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with . . . by

a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

[N.J.S.A. 10:6-2(c).]

The NJCRA, which was modeled on 42 U.S.C. § 1983, created a private cause of action for violations of civil rights secured by the federal and New Jersey Constitutions. Tumpson v. Farina, 218 N.J. 450, 474 (2014); Rezem Fam. Assocs., L.P. v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011). Thus, in interpreting the NJCRA, New Jersey courts often look to federal cases analyzing § 1983. See Farina, 218 N.J. at 474 (cases applying "[§] 1983 may provide guidance in construing our Civil Rights Act.").

To establish the internal affairs investigation of his certification which contained false information constituted unlawful retaliation for his First Amendment protected speech, plaintiff must show that he: (1) "engaged in a protected activity, (2) that defendant['s] retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

A-0888-23

Importantly, the speech must involve a matter of public concern. Lapolla v. Cnty. of Union, 449 N.J. Super. 288, 307 (App. Div. 2017). Whether a plaintiff's claim relates to a matter of public concern depends on "the content, form, and context of [the petition], as revealed by the whole record." Id. at 308 (alteration in original) (quoting Borough of Duryea v. Guarnieri, 564 U.S. 379, 398 (2011)). Plaintiff also must establish his interest in the speech "outweighs the state's countervailing interest as an employer in promoting the efficiency of the public service it provides through its employees . . . ." Id. at 307. In addition, plaintiff must establish the protected activity was a substantial or motivating factor in the alleged retaliatory action. Ibid. Finally, the public employer may rebut the plaintiff's claim by demonstrating that it would have "reached the same decision . . . even in the absence of the protected conduct." Ibid.

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." DeFaminis, 480 F.3d at 267. "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation."

A-0888-23

Ibid. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).

We see no error in the motion court's determination plaintiff raised no genuine issue of material fact with respect to whether his submission of a certification containing false information was public speech. Neither plaintiff's federal action nor his certification involved matters of public concern. The federal suit concerned employment actions specific to plaintiff and sought to advance only plaintiff's private interest in recovering damages. Plus, plaintiff does not have a First Amendment interest in submitting a false certification in a federal court action, even if that action involved matters of public concern. The motion court did not err when it granted defendants summary judgment on count two of the third amended complaint.

To the extent we have not specifically addressed any of plaintiff's remaining contentions, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).[3]

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hadley

Clerk of the Appellate Division

---

[3] Although plaintiff moved to vacate the September 1, 2023 order pursuant to Rule 4:50-1, we see no error in the motion court viewing plaintiff's motion as one for reconsideration of the order.

A-0888-23